IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TRIANDUS TABB, # R-41511,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-845-JPG |
| | ) |
| **SALVADORE A. GODINEZ,** | ) |
| **SHERRY BENTON,** | ) |
| **RICHARD HARRINGTON,** | ) |
| **TIMOTHY R. VEATH,** | ) |
| **DAVID T. JOHNSON,** | ) |
| **LORI OAKLEY,** | ) |
| **BETHANY B. RICH,** | ) |
| **and MAYNARD HUDSON,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has served the majority of his 12-year sentence for attempted murder and four-year sentence for attempted vehicle hijacking. He claims that his due process rights were violated when he was found guilty of a fabricated disciplinary charge and punished with one year in segregation.

More specifically, Plaintiff claims that on June 25, 2013, during a routine shakedown of his housing unit, Defendant Rich planted a homemade knife in Plaintiff's cell. She then wrote him a disciplinary ticket for the offense of 104-Dangerous Contraband (Doc. 1, pp. 7-8). The weapon had allegedly been found in a glove in a tuna bag on the cell floor (Doc. 1, p. 9; Doc. 1-1, p. 3).

After the shakedown, Plaintiff was interviewed by Defendant Hudson (Internal Affairs

Officer) while he was waiting to be processed into segregation. Defendant Hudson read Plaintiff his *Miranda* rights and explained that Plaintiff could be facing criminal charges over the incident.[1] Concerned that he might say something that could be used against him in a criminal proceeding, Plaintiff invoked his Fifth Amendment right to remain silent.

On June 28, 2013, Plaintiff appeared before the adjustment committee, made up of Defendants Veath and Johnson, for his disciplinary hearing. When Defendant Veath asked Plaintiff for a plea in response to the charge, he responded that he pled the Fifth Amendment so he would not incriminate himself for future charges, and requested to talk to a lawyer before he said anything else (Doc. 1, p. 8, Doc. 1-1, p. 10). Plaintiff was returned to his cell, expecting that further proceedings would take place. However, he eventually received the report of the adjustment committee,[2] which stated incorrectly that Plaintiff had pled guilty to the charge and had admitted that the knife was his (Doc 1-1, p. 3). He was punished with one year each of segregation, C-grade, and commissary restriction. Plaintiff's cellmate was not punished for the incident.

On July 20, 2013, Plaintiff filed an "emergency" grievance seeking expungement of the charge (Doc. 1-1, pp. 7-8). Defendant Harrington (Menard Warden at the time) determined the matter was not an emergency, and Defendant Oakley (grievance officer) returned the form to Plaintiff with instructions to re-submit it as a regular grievance (Doc. 1, p. 9). Plaintiff "filed another grievance" on August 9, 2013, raising the same request (Doc. 1-1, pp. 9-10). Defendant

---

[1] Plaintiff asserts that "every individual who came to segregation from [his housing unit] on 6/25/13 for a Dangerous Contraband offense plead guilty and was prosecuted in Randolph County, in Menard, Illinois, also read their *Miranda* Rights by Internal Affairs before the adjustment committee hearing." (Doc. 1, p. 12).

[2] It is noted on this final summary report that a copy of the document was served on Plaintiff on July 7, 2013 (Doc. 1-1, p. 3).

Oakley, however, rejected it as having been filed beyond the 60-day time limit.[3]  Plaintiff sent the grievance to Defendant Benton (of the Administrative Review Board), but she also ruled it was not submitted within the proper time frame (Doc. 1-1, p. 12).

Plaintiff argues that his due process rights were violated by Defendant Veath, who took Plaintiff's invocation of his Fifth Amendment right to remain silent as the equivalent of a guilty plea, and by Defendant Johnson, who concurred with the guilty finding (Doc. 1, p. 10).  Further, the disciplinary conviction was not supported by any direct evidence that the weapon belonged to Plaintiff and not to his cellmate.[4]  Nobody observed Plaintiff with the weapon.  The cellmate later informed Plaintiff that he was never charged with having dangerous contraband, and was released from segregation after being interviewed by internal affairs.  Based on this differential treatment, Plaintiff also raises an equal protection claim.

Finally, he claims that Defendants Benton and Oakley denied him due process and equal protection under the law when they wrongfully concluded that his August 9, 2013, grievance was "out of time frame," when in fact it had been filed within the 60 days following the June 25, 2013, cell search (Doc. 1, p. 10).  Plaintiff asserts that under the "mailbox rule," his grievance should have been considered filed on August 9, 2013, the date he placed it in the institutional mail, and not on September 12, 2013, the date it was received by the Administrative Review Board (Doc. 1, p. 11).  He claims this failure to review his grievance violated his rights under the United States Constitution, the Illinois Constitution, and the prison administrative rules (which he refers to as DR 504).

Plaintiff seeks declaratory relief; an injunction to restore his privileges, expunge the

---

[3] Plaintiff dated this grievance August 9, 2013, and the document is stamped to indicate it was received by the Grievance Office on September 4, 2013 (Doc. 1-1, p. 9).

[4] Plaintiff's point is substantiated by Defendant Rich's notes on the shakedown record that the knife was "found in a common area" (Doc. 1-1, p. 1).

disciplinary action from his record, and transfer him to a different prison; and compensatory and punitive damages (Doc. 1, p. 14).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into three counts:

> **Count 1:** Defendants Rich, Veath, Johnson and Hudson deprived Plaintiff of a liberty interest without due process, by charging him with possession of a weapon, finding him guilty, and punishing him with one year of segregation, when there was no evidence linking him to the weapon and he never pled guilty to the charge;
>
> **Count 2:** Defendants Rich, Hudson, Veath, and Johnson denied Plaintiff equal protection under the law when they pursued the weapon charge against him only, and not his cellmate, when the weapon was found in a common area of the cell and neither Plaintiff nor his cellmate admitted guilt;
>
> **Count 3:** Defendants Oakley, Harrington, and Benton denied Plaintiff's rights to due process by refusing to hear his grievances over the disciplinary matter.

Accepting Plaintiff's factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), the Court finds that the claims in **Counts 1 and 2** survive review under § 1915A, and shall receive further consideration. However, **Count 3** shall be dismissed.

**Count 1 – Deprivation of a Liberty Interest Without Due Process**

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S.

539 (1974) (advance written notice of the charge, the right to appear before an impartial hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). To withstand constitutional scrutiny, the disciplinary finding must also be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined above provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

Here, Plaintiff states at the outset that he believes Defendant Rich planted the knife in his cell. Under the above authority, had Plaintiff's disciplinary hearing been conducted in conformance with *Wolff*'s procedural requirements and been supported by even a meager amount of evidence, *see Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007), he would have no claim. However, Plaintiff's challenge to the evidence underlying the disciplinary action (his silence being misconstrued as an admission of guilt, and lack of evidence that Plaintiff possessed the weapon) raises a question as to whether the decision of the disciplinary hearing board had any factual basis. *See Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000); *Black*, 22 F.3d at 1402. This possible denial of due process, coupled with the length of Plaintiff's disciplinary segregation, indicates that it would be premature to dismiss Plaintiff's claim at this juncture.

Even so, the circumstances under which an inmate punished with segregation may have a cognizable claim for deprivation of a liberty interest without due process of law are limited. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the

ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). Under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

Two elements must be considered in assessing whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The one-year segregation term imposed upon Plaintiff satisfies the duration requirement under *Marion*, indicating that a factual inquiry into the conditions of his segregation is appropriate. *See Id.* The complaint is silent as to the conditions of Plaintiff's confinement in segregation. Accordingly, the due process claim in **Count 1** shall receive further consideration, to determine initially whether the conditions of Plaintiff's disciplinary segregation resulted in any atypical and significant hardship.

Count 1 shall proceed only against Defendants Rich, Veath, Johnson, and Hudson, because these are the only individuals alleged to have been directly involved in bringing, investigating, and adjudicating the disciplinary charge that gave rise to Plaintiff's claim. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (internal quotations and citations omitted). None of the other Defendants had any involvement in filing

the charge or conducting the disciplinary hearing. Even if others later gave administrative approval to the action or denied Plaintiff's grievances over the events, such conduct does not amount to personal involvement in the alleged constitutional violation. *See also Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of *respondeat superior* is not applicable to § 1983 actions).

**Count 2 – Equal Protection**

Plaintiff does not allege that he was treated differently on account of his race, gender, or membership in any definable class of persons. Instead, the basis for his equal protection claim appears to be that he was singled out to face a disciplinary charge for possession of the knife found in the cell's common area, while his cellmate was not similarly charged. Such an allegation is known as a "class-of-one" equal protection claim. "To state a class-of-one equal protection claim, an individual must allege that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The complaint suggests that Plaintiff's invocation of the Fifth Amendment and demand for a lawyer might have had a bearing on the Defendants' decision to charge him with the disciplinary infraction. Whether or not the differential treatment was due to some improper motive, or was based on a rational and proper reason, cannot be discerned at this early stage of the case. Plaintiff has at this point raised a question as to the reason for his unequal treatment with reference to his similarly-situated cellmate, which shall receive further review. *See Geinosky v. City of Chicago,* 675 F.3d 743, 748 (7th Cir. 2012) ("When the parties raise a serious question whether differences in treatment stem from a discriminatory purpose or from a relevant

factual difference, the key evidence is often what was done in the investigation or prosecution of others in similar circumstances.").

**Count 2** shall proceed only against Defendants Rich, Hudson, Veath, and Johnson, as it appears these are the only individuals who had some direct personal involvement in bringing, investigating, and pursuing the dangerous contraband charge against Plaintiff.

**Dismissal of Count 3 – Refusal to Consider Grievances**

Plaintiff's claim that Defendants Oakley, Harrington, and Benton improperly denied consideration of his grievances does not give rise to an independent constitutional claim upon which relief may be granted. Plaintiff presents a plausible argument that, under the mailbox rule, his grievances were actually filed within the 60-day deadline prescribed in the state administrative regulations that govern the prison grievance procedures. However, regardless of the merits of this argument, the Defendants' rejection of Plaintiff's grievances as untimely simply does not implicate any constitutional due process concerns.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. Because the Constitution does not require any procedure for the remediation of prisoners' grievances, the failure of state prison officials to follow their own administrative procedures does not violate the United States Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). The complaint likewise does not suggest any basis for an equal protection claim in reference to the handling of Plaintiff's grievances. Further, a federal court does not enforce state law and regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert.*

*denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

Finally, there is no suggestion that Defendants Oakley, Harrington, or Benton were involved in the disciplinary action which gave rise to Plaintiff's grievances. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

For these reasons, **Count 3** shall be dismissed with prejudice, as will Defendants Oakley, Harrington, and Benton. Because Plaintiff cannot maintain a federal constitutional claim based on the mishandling of his grievances, the Court shall not consider any related claim he may have under the Illinois Constitution.

**Defendant Godinez**

Nowhere in the complaint does Plaintiff allege that Defendant Godinez had any involvement whatsoever in the disciplinary action underlying this complaint. Thus, there is no basis to hold him liable for any constitutional violations which may have taken place. However, because Plaintiff is seeking injunctive relief, Defendant Godinez shall remain in the action. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**Disposition**

**COUNT 3** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **BENTON, HARRINGTON,** and **OAKLEY** are **DISMISSED**

from this action with prejudice.

The Clerk of Court shall prepare for Defendants **GODINEZ, VEATH, JOHNSON, RICH,** and **HUDSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 18, 2014**

*s/ J. Phil Gilbert*
United States District Judge
